IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

MICHAEL BITTNER,
    Plaintiff,

v.

WRIGHT MEDICAL GROUP, INC.
and TORNIER, INC.,
    Defendants.

Case No. 4:17-cv-04241-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion to Dismiss (Doc. 4). This matter has been referred for a Report and Recommendation. The Motion is fully briefed, and for the reasons stated herein, the Court recommends that the Motion to Dismiss be granted and the Plaintiff's Complaint dismissed without prejudice.

**I**

On August 22, 2017, Defendants Wright Medical Group, Inc. (Wright) and Tornier, Inc. (Tornier) removed this case from the Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois on the basis of diversity jurisdiction. In his Complaint, the Plaintiff raised four claims: 1) strict liability – defective design; 2) strict liability – defective manufacture; 3) strict liability – failure to warn; and 4) negligence. Of relevance to the Motion to Dismiss, the Plaintiff made the following allegations:

    ¶1    At all times material to this Complaint, Plaintiff, Michael Bittner, was a resident of Whiteside County, Illinois.

    ¶3    At all times material hereto, Wright conducted business in Illinois and was engaged, among other things, in the business of designing, manufacturing, assembling, advertising,

    promoting, distributing, selling or otherwise placing into the stream of commerce, prosthetic and orthotic devices, including but not limited to, elbow replxements [sic].

¶7 At some point prior to July 22, 2015, the Plaintiff was the recipient of a right elbow prosthetic device, which devise [sic] was surgically implanted in the Plaintiff.[1]

¶9 On July 22, 2015, the Plaintiff underwent surgery at the Mayo Clinic located in Rochester, Minnesota, at which time the prosthetic device above-mentioned was found to have a loose humeral component and a disassembled linkage mechanism.

¶10 As a result of the failed implant, the Plaintiff was forced to undergo surgery to repair and replace the failed prosthetic elbow.

(Doc. 1-1 at pgs. 5-6). On August 29, 2017, the Defendants filed their Motion to Dismiss requesting the Court dismiss the Plaintiff's Complaint with prejudice because the Court lacks personal jurisdiction over the Defendants.

## II

The Defendants argue that they are subject to neither general jurisdiction in Illinois nor specific jurisdiction in Illinois in light of the Plaintiff's allegations. The Plaintiff concedes general jurisdiction does not exist in this case.[2] Accordingly, the Court's analysis is limited to the question of whether it may exercise specific personal jurisdiction over Defendants Wright and Tornier.

---

[1] In his Memorandum in Support of Resistance to Motion to Dismiss for Lack of Personal Jurisdiction, the Plaintiff states that the "installation [of a defective right elbow prosthetic manufactured by the defendant, Tornier, Inc.] took place at the Mayo Clinic in Rochester, Minnesota." (Doc. 10 at pg. 1).

[2] The Plaintiff's Complaint includes allegations that at all times material Defendant Wright was a Delaware corporation with its principal place of business in Memphis, Tennessee and that Defendant Tornier was a Delaware corporation with its principal place of business in the United States in Bloomington, Minnesota. (Doc. 1-1 at pg. 15).

2

A

While a "complaint need not include facts alleging personal jurisdiction," once a defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003), citing *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). When a court rules on a defendant's motion to dismiss based upon the submission of written materials without the benefit of an evidentiary hearing, a plaintiff must only make out a *prima facie* case of personal jurisdiction. *Purdue Research Found., Inc.*, 338 F.3d at 782, citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In determining whether the plaintiff has made a *prima facie* case, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record. *Purdue Research Found., Inc.*, 338 F.3d at 782.

B

A federal court exercising diversity jurisdiction must rely upon the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting. *Hyatt Int'l Corp.*, 302 F.3d at 713. Here, the Court must look to Illinois law to determine whether it may exercise personal jurisdiction over Defendants Wright and Tornier. Illinois's long-arm statute provides that, "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Seventh Circuit Court of Appeals has typically concluded that there is normally "no operative difference" between Illinois constitutional and federal constitutional limits on personal jurisdiction. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). Thus, the proper inquiry is whether, under the Fourteenth Amendment's Due Process Clause, the

3

defendant has "minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 913, citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 66 S. Ct. 154 (1945).

The primary focus of a court's personal jurisdiction inquiry is the defendant's relationship to the forum State. *Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1779 (2017). In order for a court to exercise specific jurisdiction, the suit "must arise out of or relate to the defendant's contacts with the forum." *Id.* at 1780. Stated another way, there must be an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Id.* at 1781. A defendant's general connections with the forum are insufficient. *Id.* Also, it is "the defendant – not the plaintiff or third parties – that must create the contacts in the forum state, and those contacts must be with the forum State itself, not with persons who reside there." *Philos Technologies, Inc.*, 802 F.3d at 913.

Here, the Plaintiff's allegations in his Complaint pertaining to Illinois include that Plaintiff Bittner was at all times relevant to the Complaint a resident of Illinois and "Wright conducted business in Illinois and was engaged, among other things, in the business of designing, manufacturing, assembling, advertising, promoting, distributing, selling or otherwise placing into the stream of commerce, prosthetic and orthotic devices, including but not limited to, elbow replxements [sic]." (Doc. 1-1). However, the underlying controversy here is one for negligence and strict liability against Defendants Wright and Tornier based upon the alleged defective design, defective manufacture, and failure to warn of their product. That product – a right elbow prosthetic – was, as alleged by the Plaintiff, surgically implanted in the Plaintiff in Minnesota, found in Minnesota

to have a loose humeral component and a disassembled linkage mechanism, and repaired and replaced in Minnesota.[3] There are no allegations in the Complaint or information presented in the Plaintiff's Response to the Motion to Dismiss elucidating the Defendants' relationship to Illinois beyond the allegations of Paragraph 3 of the Plaintiff's Complaint. On its face, Paragraph 3 sets forth no more than the Defendants' general connections with the forum which are clearly insufficient under case law applying the settled principles regarding specific jurisdiction.

The Supreme Court recently stated in *Bristol-Myers Squibb Co.* that a court must consider a variety of interests but the "primary concern" is the burden on the defendant. 137 S. Ct. at 1780. In this case, the Defendants argue that they have made no purposeful contact with Illinois with respect to this case and so requiring them to defend against the Plaintiff's claims in this forum would grossly offend the traditional sense of fair play and substantial justice. The Plaintiff offers in response nothing in the way of Defendants' contacts with Illinois in the context of this particular case. Instead, the Plaintiff argues that the Court look no further than the two cited cases in the Plaintiff's Response to determine Wright's amenity to suit in this jurisdiction. The Plaintiff does not make the necessary *prima facie* case by reference to those cases where they are both distinguishable and do not show how the claims in *this* case arose out of or are related to the defendant's contacts with *this* forum.

In *Gerk v. CL Medical SARL*, the plaintiff brought a products liability action after suffering injuries stemming from the surgical implantation of a transvaginal mesh sling against a French corporation. 175 F. Supp. 3d 1074, 1075 (C.D. Ill.

---

[3] While Paragraph 10 of the Plaintiff's Complaint does not explicitly state the Plaintiff was forced to undergo surgery to repair and replace the failed prosthetic elbow, the Defendants state that such occurred in Minnesota (citing to Paragraph 10) in their Memorandum of Law in support of their Motion to Dismiss, and the Plaintiff does not dispute that in his Response or present evidence showing otherwise.

2016). CL Medical sold and distributed the device to a handful of states in the United States. *Id.* The complaint alleged that Defendant SARL and CL Medical were alter-ego companies, and specially appearing Defendant SARL filed a motion to dismiss arguing the court lacked personal jurisdiction over it as a foreign corporation. *Id.* at 1076. The court granted SARL's motion for leave to propound limited jurisdictional discovery and its first motion to dismiss after it concluded that no facts were presented that identified the device's sales were directed to or made in Illinois, no facts were presented that indicated the device implanted in the plaintiff was sold in Illinois to a physician or hospital, no facts were presented that showed which states the device was marketed and sold in, and the plaintiff did not provide evidence or specific facts about the alleged exclusive distribution agreement between SARL and CL Medical. *Id.* The court also found significant that the plaintiff neither alleged specific facts nor presented any evidence indicating SARL intentionally availed itself of the privilege of conducting business in Illinois or that it was reasonably foreseeable that its products would end up in Illinois. *Id.* The plaintiff thereafter filed an amended complaint and SARL again moved to dismiss for lack of personal jurisdiction. *Id.*

The court explained that the outcome of the second motion to dismiss depended on whether the plaintiff's amended complaint sufficiently alleged facts showing that SARL purposefully availed itself of the privilege of conducting activities within Illinois. *Id.* at 1079. The court identified the allegations relevant to its finding that the plaintiff alleged facts sufficient to establish SARL sought to serve the Illinois market by targeting its actions toward Illinois: the amended complaint showed the number of devices sent by SARL to the United States and by CL Medical to Illinois; SARL exhibited its product at a scientific conference in Illinois (which was advertised on its website); SARL advertised reference centers

and product training courses in Illinois and the plaintiff's implanting physician in Illinois was listed as a reference; and the qualitative relationship between SARL and CL Medical showed their association was not necessarily separate and independent. *Id*. at 1080. The court ultimately concluded that when the evidence was viewed in the light most favorable to the plaintiff, he made a *prima facie* showing that SARL purposefully availed itself of the privilege of conducting business in Illinois, therefore justifying specific jurisdiction. *Id.*

Significantly, in *Gerk*, the plaintiff was implanted *in Illinois* with the device at issue and the doctor who performed the implantation was specifically listed as a reference by the defendant for the device *in Illinois*. Here, the Plaintiff received the elbow replacement in Minnesota at the Mayo Clinic and there are no allegations similar to those in *Gerk* that the doctors performing the surgeries in this case had any connection with Illinois via Wright or Tornier. The *Gerk* case only highlights the paucity of allegations and evidence the Plaintiff in this case presented to establish the Defendants purposefully availed themselves of the privilege of conducting activities within Illinois and, more importantly, that the Plaintiff's claims arose out of or related to the Defendants' contacts with Illinois.

In *Kelly v. Wright Med. Grp., Inc.*, the court considered the defendant's motion to transfer venue to the United States District Court for the Central District of Illinois (this Court) pursuant to 28 U.S.C. § 1404(a). 2016 WL 738805, No. 15-6706, at *1 (N.D. Ill. Feb. 25, 2016). In that case, one of the defendants was an exclusive sales agent and distributor in Illinois for the device at issue. *Id.* He, in turn, was the president of another defendant which was an Illinois corporation with its principal place of business in Illinois. *Id.* The plaintiff was a resident of Illinois and the implantation of the device occurred in Illinois. *Id.* According to the plaintiff, the Wright defendants and other defendants had regular and frequent contacts from surgeons who implanted the device at issue (including

the plaintiff's own surgeon) about failures and complications of the device. *Id*. at *2. The bulk of the court's opinion was an analysis of whether the case should be transferred from the United States District Court for the Northern District of Illinois to the United States District Court for the Central District of Illinois. *Id*. at *2-5.

*Kelly* is distinguishable from the instant case as the alleged facts in *Kelly* included that the plaintiff was implanted with the device at issue in Illinois by a surgeon in Illinois, one of the defendants was an exclusive sales agent and distributor of the device in Illinois and served as president of an Illinois corporation with its principal place of business in Illinois which delivered the device in Illinois, and the plaintiff's surgery to remove the device was conducted in Illinois. Again, as discussed above, in *this* case, the Plaintiff was implanted with the prosthetic elbow in Minnesota and his additional surgery also occurred in Minnesota. The only allegations related to the Defendants' contacts with Illinois are little more than Wright conducted business in Illinois. Furthermore, the analysis in *Kelly* is inapposite as the court was tasked with considering a motion to transfer venue, not a motion to dismiss for lack of personal jurisdiction. Considerably different, imposing hurdles are presented in the latter than in the former. In the end, the Plaintiff has not pointed to any allegations (even when viewed in the light most favorable to him) or presented any evidence to make out a *prima facie* case of personal jurisdiction over the Defendants in this case.

Finally, the Court recommends that the Plaintiff's request for limited discovery with respect to the issue of jurisdiction be denied. Any evidence of an affiliation between Illinois and the underlying controversy is arguably already within the possession of the Plaintiff himself as it was he who ventured from Illinois to Minnesota to have the elbow replacement implanted and then

repaired. Therefore, if the Defendants' connection to Illinois led to the Plaintiff seeking the use of the device in question, he should know and be able to allege exactly what that connection was. In other words, arguably he could pinpoint the Defendants' Illinois contacts which resulted in his receipt of that elbow prosthesis now at issue. Yet the Plaintiff made no attempt to present evidence that, at minimum, *suggests* that he could establish a connection between the Defendants' contacts with Illinois and the claims at issue in this case. *See In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015) (explaining that the court has discretion to order limited discovery that would allow a plaintiff to uncover facts that might establish jurisdiction where the plaintiff's allegations establish a "colorable" showing of personal jurisdiction). The Court recommends that the Plaintiff's Complaint be dismissed without prejudice as dismissal for lack of personal jurisdiction is not a decision on the merits. *Schmidt v. Europea Ltd.*, 2001 WL 868696, No. 00-1739, at *3 (S.D. Ind. May 18, 2001); *see also* 5B CHARLES ALAN WRIGHT, ET AL., Federal Practice and Procedure § 1351 (3d ed. 2017) ("[T]he denial of a motion to dismiss a complaint for lack of jurisdiction over the defendant's person . . . is not a final adjudication . . . .").

### III

For the above reasons, it is recommended that: 1) the Defendants' Motion to Dismiss (Doc. 4) pursuant to Federal Rule of Civil Procedure 12(b)(2) and 81(c) be GRANTED and the Plaintiff's Complaint be dismissed WITHOUT PREJUDICE; 2) the Plaintiff be allowed to file an amended complaint; and 3) the Plaintiff's request for limited jurisdictional discovery be denied.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2);

28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on January 23, 2018.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE